United States District Court
Southern District of Texas

**ENTERED**

July 13, 2022

Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| TABARI S. STRONG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:21-CV-00261 |
| | § | |
| BOBBY LUMPKIN, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Tabari S. Strong, a Texas inmate proceeding *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the Court is a Motion to Dismiss filed by Defendant Bobby Lumpkin, Director of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID).  (Doc. No. 15.)  For the reasons set forth below, the undersigned recommends that Defendant's motion be GRANTED in part and that Plaintiff's action be DISMISSED.

### A.  Jurisdiction.

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

### B. Background: Plaintiff, a Texas state prisoner, challenges a newly amended TDCJ policy.

Plaintiff is a prisoner in TDCJ-CID, currently housed at the McConnell Unit in Beeville, Texas, which lies within this district.  The facts giving rise to Plaintiff's claims in this lawsuit occurred during his current assignment to the McConnell Unit.

In his complaint, Plaintiff sues Defendant in his official capacity.  (Doc. No. 1, p. 6.) Plaintiff challenges certain provisions of Texas Board of Criminal Justice Policy 03.91, *Uniform Inmate Correspondence Rules* (BP-03.91),[1] an amended version of which ("Revision 5") became effective on August 1, 2021.  *See id.*  BP-03.91, as amended, now prohibits inmates from receiving incoming correspondence that contains sexually explicit images.  (Doc. No. 15-1, pp. 3, 5, 12, 14.)  The policy defines "sexually explicit image" as

> material in publications, photographs, drawings, or any type of image, which depicts sexual behavior, is intended to cause sexual excitement or arousal, or shows: frontal nudity of either gender, including the exposed female breast(s) with nipple(s) or areola(s); the genitalia, anus, or buttocks, or partially covered buttocks of either gender; the discharge of bodily fluids in the context of sexual activity; or sexual behavior from any vantage point.  The chests of infants and pre-pubescent children are not considered breasts, unless further restricted by a treatment program policy.

*Id.* at 5.  The policy provides that all incoming correspondence containing a sexually explicit image "shall be disapproved for … receipt."  *Id.* at 12.

According to Plaintiff, any materials containing "sexually explicit images" found in an inmate's possession will be deemed to be contraband and subject to confiscation.  (Doc. No. 1, pp. 7-9.)  Plaintiff claims that this amended policy "will violate" his "rights of: illegal seizure;

---

[1] Defendant has attached this policy to his motion to dismiss.  (Doc. No. 15-1.)  This policy is central to Plaintiff's claims, and is a matter of public record.  The policy is publicly available on the TDCJ website, at https://www.tdcj.texas.gov/documents/policy/BP0391.pdf.  As explained below, the Court can consider Defendant's attachment of the policy without transforming this Rule 12(b) motion into a summary judgment motion.

cruel and unusual punishment; by way of deliberate indifference and discrimination." *Id.* at 6.
Specifically, Plaintiff is concerned that application of BP-03.91 will result in confiscation of
sexually explicit images that, apparently, are either currently in his possession or will arrive in
the mail via existing subscription.[2]

BP-03.91 does not contain any provision for confiscation of materials that are already in
an inmate's possession.  The parties, however, both appear to believe that the policy does
prohibit both receipt and possession of such materials.  *See* Doc. No. 1, p. 6 (Plaintiff alleges
that, under BP-03.91, any inmate who possesses sexually explicit materials will have those
materials confiscated and will receive a "disciplinary case" for possessing such items); Doc. No.
15, p. 2 (Defendant states that BP-03.91 "restricts TDCJ inmates' possession and receipt of
sexually explicit materials").[3]

BP-03.91 sets forth procedures for reviewing incoming correspondence or publications in
the mailroom and for inmates to appeal any decision denying incoming correspondence or
publications.  (Doc. No. 15-1, pp. 12, 16-17.)  Specifically, "[a]ll publications are subject to
inspection by the [Mail System Coordinators Panel (MSCP)] and by unit staff" with the MSCP
having "the authority to accept or reject a publication for content, subject to review by the
[Director's Review Committee (DRC)]." *Id.* at 13.  A publication may be rejected if it contains
sexually explicit images.  *Id.* at 14.  Under the amended policy, however, "subject to review by

---

[2]  Plaintiff does not specifically state in his pleadings that he possesses or will possess materials that fit the definition
of sexually explicit images.  But Plaintiff does intimate that he will have materials confiscated, and that he will face
a disciplinary case for possessing those materials.

[3]  In so asserting, Defendant cites to pages 10 and 12 of BP-03.91.  Review of those pages, however, reveals only
provisions for screening of incoming mail for sexually explicit materials, not a prohibition of continued possession
of such materials that are already in an inmate's possession. *See* Doc. No. 15-1, p. 12 (section entitled "Handling
Inmate Correspondence" describes process for inspection and rejection of incoming and outgoing general
correspondence); *id.* at 10-12 (describing content inspection of publications).  Indeed, BP-03.91 itself is entitled
"Uniform Inmate Correspondence Rules."

the MSCP on a case-by-case basis, publications constituting educational, medical, scientific, or artistic materials, including anatomy medical reference books, general practitioner reference books or guides, *National Geographic*, or artistic reference material depicting historical, modern, or post-modern era art, may be permitted." *Id.*

Plaintiff also asserts that amended BP-03.91 contradicts TDCJ Administrative Directive 03.72 (AD-03.72), *Offender Property*, which, according to Plaintiff,[4] defines "Offender Property" as consisting of "authorized items that accompany an offender or received in accordance with or meeting the requirements of BP-03.91 (before it was revised) and items purchased from [the] commissary or approved vendor while in custody of TDCJ."  Doc. No. 1, p. 7 (emphasis deleted).  Before August 1, 2021, Plaintiff states, he engaged in the following process under AD-03.72 in order to acquire items by mail: (1) Plaintiff submitted a written request to the mailroom seeking to make an "outside purchase;" (2) mailroom officials checked whether the vendor was on the approved mailing list; (3) mailroom officials scheduled Plaintiff through a "lay-in" pass[5] to visit the mailroom with a completed outside-purchase slip; (4) Plaintiff used his thumbprint to sign the slip to ensure he had sufficient funds to make the purchase and the right to possess the purchased items; (5) the slip was mailed to TDCJ headquarters for inmate trust fund personnel to ensure compliance with the previous steps and to mail the check to the approved vendor; and (6) when the purchased items were mailed to the

---

[4]  AD-03.72 is not part of the record before the Court.  It is not attached to the submissions of either party, and it does not appear to be publicly available.

[5]  Generally speaking, a lay-in pass excuses an inmate from a work assignment at a specific time, such as for a medical or dental appointment, or for some other official activity requiring their attendance during a time when the inmate would otherwise be working.

unit, mailroom officials inspected the publications and approved them for Plaintiff.  *Id.* at 8-9.
According to Plaintiff, amended BP-03.91 "violates" this approval process.  *Id.* at 9.

Plaintiff states that, utilizing the procedures in AD-03.72, he was able to purchase (for "a little more than $500") publications containing over 800 pictures, that he used his inmate trust fund account to legally purchase these items, and that he now possesses those items.  (Doc. No. 1, p. 7.)  Additionally, Plaintiff states that in July 2021, under the previous version of BP-03.91, he permissibly purchased 180 more photos costing $100.  *Id.*

Plaintiff asserts that the amended policy does not support TDCJ's security interests in minimizing rapes, masturbation, and possession of drugs or cell phones.  (Doc. No. 1, pp. 9-10.) Plaintiff maintains that he has no personal issues involving sexual deviancy, drug use, or possession of contraband such as cell phones.  *Id.*  Plaintiff asserts, therefore, that he is the victim of discrimination in that he will suffer harm by those inmates who choose to rape, masturbate, use drugs, and possess cell phones.  He also asserts that TDCJ consistently "attacks" males who refuse to be homosexual; therefore, Plaintiff says, TDCJ is promoting homosexuality with their policies.  *Id.* at 10-11.  Rather than blaming images contained in drawings, publications, or photos for causing harm, Plaintiff declares that TDCJ is placing a burden on inmates not to be "human" and for desiring females to fulfill inmates' sexual needs.  *Id.* at 11-12.

Plaintiff asserts that TDCJ will use its "entrapment policy" (amended BP-03.91), to seize his personal property that he purchased legally with his inmate trust fund account and approved by McConnell Unit's warden and mailroom staff.  (Doc. No. 1, p. 12.)  Plaintiff filed a Step 1 grievance, dated August 1, 2021, complaining that the personal property he purchased legally will be confiscated pursuant to amended BP-03.91.  *Id.* at 17-18.  Plaintiff requested that he be allowed to keep his personal property, consisting of several hundred pictures purchased legally,

without receiving any disciplinary punishment or harassment.  *Id.*  Plaintiff's Step 1 grievance was returned to him (or "screened") on the basis that the issue presented was not grievable.  *Id.* at 18, 20.  Plaintiff's Step 2 grievance, filed on August 12, 2021, was apparently not considered at all by prison officials.  *Id.* at 19-20.

Plaintiff does not allege that any materials have actually been confiscated, and in fact acknowledges that nothing has been confiscated.  He states, in his April 22, 2022 response to Defendant's dismissal motion: "Although, as of yet, Plaintiff has not had items confiscated, said items are considered 'contraband' & Plaintiff seeks to prevent any confiscation and/or disciplinaries in the future."  (Doc. No. 18, p. 1.)

Plaintiff seeks several forms of relief, which he dubs the "least restrictive means:"[6] (1) being permitted to continue to possess any and all photos, pictures, and publications that Plaintiff can prove were purchased from his inmate trust account; (2) being permitted to continue to possess any newspapers or magazines that Plaintiff has received via subscription, with such subscriptions to be terminated upon their expiration; (3) reimbursement for "any and all monies that Plaintiff has spent and can be verified," including for photo albums and the prospective cost of mailing forbidden items out of the prison to his family; (4) conjugal visits with his spouse at least once per month to meet Plaintiff's "natural sex need;" (5) court costs; (6) establishment of a disciplinary policy to require confiscation of sexually explicit materials from inmates who engage in rape or masturbation in the prison; and (7) amendment of BP-03.91 to allow Plaintiff

---

[6] Plaintiff's use of the term "least restrictive means" is inapt.  The concept of "least restrictive means" applies in cases involving the Religious Land Use and Institutionalized Persons Act (RLUIPA), *see* 42 U.S.C. § 2000cc-1, but this case does not implicate any matter involving religious exercise.  Apart from the religious context, courts are not required to apply a least restrictive means test when evaluating security policies adopted by prison administrators. *See Elliott v. Lynn*, 38 F.3d 188, 191 (5th Cir. 1994).

(and presumably other inmates) to possess items that were acquired and possessed prior to the amendment of BP-03.91.  (Doc. No. 1, pp. 14-15.)

### C. *Defendant's motion to dismiss, and Plaintiff's response.*

On February 22, 2022, Defendant filed a motion to dismiss this case, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Doc. No. 15.)  Defendant argues, among other things, that Plaintiff lacks standing to bring this action because he has not alleged that he suffered an injury-in-fact or can show redressability, and that Plaintiff has not stated any constitutional violation.  (Doc. No. 15, pp. 7-9, 9-15.)  Defendant also asserts that Plaintiff's complaints are barred by Eleventh Amendment immunity.  *Id.* at 4-5.  Defendant further contends that the exception to such immunity does not apply because Plaintiff's complaints are not redressable through Defendant; he argues that he has no "direct connection" to the policy, because he is not a member of the board that adopted that policy and because he (allegedly) plays no role in the policy's enforcement at the unit level.  *Id.* at 5-6.

In his response to the motion, Plaintiff asserts that he was entrapped (by virtue of the subsequently amended policy) into purchasing pictures that he now believes are subject to confiscation, because Defendant and TDCJ did not previously prohibit his purchase of those items.  (Doc. No. 18, p. 3.)  Plaintiff also argues that he does indeed possess standing to bring his claims because "the defendants have indicated that contraband will be confiscated and Plaintiff will suffer irreparable harm in loss of good time and custody status."  *Id.* at 4 (cleaned up).  Plaintiff further contends that the confiscation of materials he has already purchased constitutes cruel punishment through deliberate indifference, *see id.* at 5, 6-7, that he is likely to be subjected to unreasonable searches and seizures of prohibited items because he allegedly properly followed TDCJ procedures to acquire those items, *see id.* at 5-6, and that any post-

deprivation remedy regarding confiscation of materials is essentially hollow because Plaintiff allegedly properly followed TDCJ processes to acquire the items. *See id.* at 7-8. Finally, Plaintiff argues that he is being subjected to discrimination as a non-transsexual, heterosexual male, because transsexuals are permitted "special privileges" and to portray themselves as females while Plaintiff is forbidden from having photos of "real females." *Id.* at 8. Finally, Plaintiff asks the Court's leave to amend his complaint, in case he has sued the wrong person. *Id.* at 5.

### D.  Legal standard.

Section 1983 provides a vehicle for redressing violations of federal law by those acting under color of state law. *See Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988).

Defendant moves to dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. No. 15.) Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). Lack of subject matter jurisdiction may be found in three instances: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). Once subject

8 / 28

matter jurisdiction has been challenged, the party asserting jurisdiction retains the burden of proof that jurisdiction truly does exist. *Ramming*, 281 F.3d at 158. Additionally, in deciding a motion to dismiss under Rule 12(b)(1) or (6), "the district court accepts as true those well-pleaded factual allegations in the complaint." *Brownlee v. Clayton Cnty. Sch. Dist.,* No. 1:96CV190-D-D, 1996 WL 692210, at *1 (N.D. Miss. Nov. 21, 1996) (citing *C.C. Port, Ltd. v. Davis-Penn Mortg. Co*, 61 F.3d 288, 289 (5th Cir. 1995)).

Rule 12(b)(6), meanwhile, provides for dismissal of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In accepting all well-pleaded facts as true, the court must also "view them in the light most favorable to the plaintiff." *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996) (citations omitted).

A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Twombly*, 550 U.S. at 555.

Typically, when ruling on a Rule 12(b)(6) motion to dismiss, courts are limited to the contents of the pleadings and any attachments. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). However, courts may also consider as part of a Rule 12(b)(6) motion "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the

record of the case, and exhibits attached to the complaint whose authenticity is unquestioned."
*Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (*per curiam*) (citations omitted);
*see also Jathanna v. Spring Branch Indep. School Dist.*, H-12-1047, 2012 WL 6096675, at *3
(S.D. Tex. Dec. 7, 2012) (Rosenthal, J.) ("Taking judicial notice of public records directly
relevant to the disputed issue is proper and does not transform the Rule 12(b)(6) motion into one
for summary judgment.").

Defendant has attached BP-03.91 to his motion to dismiss.  (Doc. No. 15-1.)  As this
policy is central to Plaintiff's claims, as well as being a matter of public record, Defendant's
attachment can be considered without transforming his Rule 12(b)(6) motion into a summary
judgment motion.

### E.  *Plaintiff establishes standing sufficient to bring his claims.*

Article III of the Constitution confines the federal judicial power to the resolution of
"Cases" and "Controversies."  U.S. Const. art. III, § 2.  For a case or controversy to exist under
Article III, "the plaintiff must have a 'personal stake' in the case—in other words, standing."
*TransUnion L.L.C. v. Ramirez*, __ U.S. __, 141 S. Ct. 2190, 2203 (2021) (quoting *Raines v.
Byrd*, 521 U.S. 811, 819 (1997)).  To establish Article III standing, Plaintiff's allegations must
meet the following three elements: (1) injury-in-fact; (2) causation; and (3) redressability.  *See
Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  "The party invoking federal
jurisdiction bears the burden of establishing these elements."  *Deutsch v. Annis Enter., Inc.*, 882
F.3d 169, 173 (5th Cir. 2018) (citations omitted).

The issue of standing is one component of subject-matter jurisdiction.  *See Cobb v. Cent.
States*, 461 F.3d 632, 635 (5th Cir. 2006).  This issue, therefore, "presents a 'threshold
jurisdictional question' in any suit filed in federal district court."  *JMF Med., L.L.C. v. Team*

*Health, L.L.C.*, 490 F. Supp. 3d 947, 973 (M.D. La. 2020) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998)).  Additionally, a motion to dismiss for lack of standing is properly considered under Rule 12(b)(1).  *Higgins v. Texas Dep't of Health Servs.*, 801 F. Supp. 2d 541, 547 (W.D. Tex. 2011) (citing *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011)).

Defendant contends that Plaintiff has not stated an "injury in fact" because he failed to allege he had any items purchased by mail confiscated or that he has been subjected to disciplinary actions for violating BP-03.91.  (Doc. No. 15, p. 8.)  Plaintiff responds, somewhat cryptically, that Defendant is likely to commit "unlawful conduct," that prison officials have indicated contraband will be confiscated, and that Plaintiff will be subjected to retaliatory harassment in the form of disciplinary actions.  (Doc. No. 18, p. 4.)

An "injury-in-fact" for purposes of Article III standing must be "actual or imminent," and cannot be hypothetical or speculative.  *Christopher v. Lawson*, 358 F. Supp. 3d 600, 606 (S.D. Tex. 2019) (Rosenthal, C.J.).  "Future harm may constitute an injury in fact for purposes of Article III standing only where the future harm is 'certainly impending, or there is a substantial risk that the harm will occur.'"  *Goldman v. Azar*, No. 4:20-cv-463, 2021 WL 3729032, at *4 (S.D. Tex. June 25, 2021) (Bryan, M.J.), *adopted*, 2021 WL 3725588, at *1 (S.D. Tex. Aug. 23, 2021) (Gilmore, J.) (citations omitted); *Nat'l Ass'n of Life Underwriters v. Clarke*, 761 F. Supp. 1285, 1288 (W.D. Tex. 1991) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)) (the injury alleged must be "'distinct and palpable', as opposed to merely '[a]bstract', and the alleged harm must be actual or imminent, not 'conjectural' or 'hypothetical'").

Plaintiff's allegations, accepted as true, do not indicate that he has yet suffered a concrete injury; he does, however, sufficiently allege that future harm is imminent.  Plaintiff alleges in his

complaint that, prior to August 1, 2021, he successfully purchased over 800 pictures (costing him "a little more than $500"), as well as 180 additional photos (costing him $100).  (Doc. No. 1, p. 7.)  Plaintiff has pleaded no facts in his complaint to suggest that these pictures and images have been confiscated pursuant to revised BP-03.91 or that he has been subjected to any disciplinary actions for purportedly violating this updated policy.  Although addressing whether incoming correspondence should be accepted or rejected, the amended BP-03.91 contains no provision expressly authorizing prison officials to confiscate correspondence, publications, or images already in an inmate's possession due to being previously approved by prison officials under AD-03.72 and the former version of BP-03.91.

The injury-in-fact requirement, however, allows for harm that is either actual or imminent.  The Court disagrees with Defendant's position, because Plaintiff has pleaded harm that is sufficiently imminent.  Plaintiff's allegations, in the Court's view, are sufficiently concrete and specific as to not be merely "conjectural" or "hypothetical."  *See Lujan*, 504 U.S. at 560.  Specifically, Plaintiff asserts specific, articulable imminent consequences through two different passages in his complaint.  First, he claims that amended BP-03.91 itself states that any inmate possessing sexually explicit images "*will* have these publications or photos, etc. . . . confiscated and they, the offender, will receive a disciplinary case for said items."  (Doc. No. 1, p. 6.) (emphasis added).  Plaintiff also asserts that "the defendants [sic] has stated that contraband will be confiscated and Plaintiff will suffer irreparable harm in loss of good time and custody status as he did in his previous quest to freely practice his religious faith."  (Doc. No. 18, p. 4) (cleaned up).  Such statements certainly differ from cases in which a plaintiff merely asserts a threat or hypothetical future harm.  *Cf. Smithback v. Perry*, No. 3:04-CV-1019-G, 2004 WL 2114704, at *2 (N.D. Tex. Sept. 22, 2004), *adopted*, No. CIV.A. 3:04-CV-1019, 2004 WL 2479904, at *1

(N.D. Tex. Nov. 3, 2004) (concluding that inmate's "claim of threatened injury as a result of

Board Policy 03.91 [was] too remote to satisfy the requirements of Article III standing");

*Stephenson v. Stolle*, No. 1:13cv445, 2013 WL 12107718, at *1-2 (E.D. Va. Sept. 30, 2013)

("Merely being subjected to [a prison policy prohibiting inmates from possessing publications

containing hip-hop material] with the threat of financial loss and disappointment is just the type

of hypothetical loss that the standing doctrine forbids.").

Had Plaintiff attached or referenced a specific notice or policy in support of his

assertions, his showing of imminent harm would no doubt be bolstered, but Plaintiff's burden

here is low.  In accepting all well-pleaded facts as true, and in viewing them in the light most

favorable to this *pro se* plaintiff, the Court finds that Plaintiff has made a sufficient showing of

an imminent harm, and therefore, injury-in-fact.  The Court also finds causation, and for the

reasons explained later in this memorandum and recommendation, redressability.[7]  Thus, the

undersigned recommends that Defendant's motion to dismiss pursuant to Rule 12(b)(1) for lack

of standing, and thus subject matter jurisdiction, be denied.

### F. Despite the existence of standing, Plaintiff's Fourth Amendment, Eighth Amendment, due process, and equal protection claims should be dismissed for failure to state a claim upon which relief can be granted.

Although the Court finds that Plaintiff possesses standing to bring this action, the Court

nonetheless recommends that Plaintiff's action be dismissed, because he fails to state claims

upon which relief can be granted.  Plaintiff's claims under the Fourth and Eighth Amendments,

---

[7]  For the same reasons later explained in this memorandum and recommendation, the Court finds that redressability is present—although just barely.  *See Lujan*, 504 U.S. at 561.  As discussed below, Defendant bears some responsibility regarding the enforcement of BP-03.91.  Defendant also may have a stronger connection to enforcing amended BP-03.91, at least as compared to members of the Board or any McConnell Unit official.

and under the Equal Protection and Due Process clauses of the Fourteenth Amendment, even read liberally, are insufficient to merit relief.

### 1. *Plaintiff fails to state a viable Fourth Amendment claim for relief.*

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  The Fourth Amendment, therefore, "protects against government intrusion into areas where people have reasonable expectations of privacy."  *United States v. Beverly*, 943 F.3d 225, 232 (5th Cir. 2019) (citing, *inter alia*, *Smith v. Maryland*, 442 U.S. 735, 740 (1979)).  "The Fourth Amendment … requires that 'searches or seizures conducted on prisoners must be reasonable under all the facts and circumstances in which they are performed.'"  *Elliott v. Lynn*, 38 F.3d 188, 191 (5th Cir. 1994) (quoting *United States v. Lilly*, 576 F.2d 1240, 1244 (5th Cir. 1978)).  "Proving the reasonableness of an inmate search, however, imposes only a 'light burden' on prison officials, '[b]ecause a prison administrator's decisions and actions in the prison context are entitled to great deference from the courts.'"  *Parker v. Woods*, 834 F. App'x 92, 95 (5th Cir. 2020) (*per curiam*) (quoting *Elliott*, 38 F.3d at 191).  "If a policy is reasonably related to legitimate security objectives and there is no substantial evidence to indicate that prison officials have exaggerated their response to security considerations, courts ordinarily should defer to prison administrators' expertise."  *Hay v. Waldron*, 834 F.2d 481, 486 (5th Cir. 1987).

The Supreme Court nevertheless recognizes that "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order."  *Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984).  Thus, "prisoners have no justified expectation of privacy

in their prison cells." *Elliott*, 38 F.3d at 191 n.3 (citing *Hudson*, 468 U.S. at 526); *United States v. Ward*, 561 F.3d 414, 419 (5th Cir. 2009) ("[A]s a per se rule a prisoner cannot invoke the Fourth Amendment because society is not prepared to recognize a prisoner's expectation of privacy in his prison cell."); *Gross v. Normand*, 576 F. App'x 318, 320 (5th Cir. 2014) (*per curiam*) (explaining that because inmates do not have an expectation of privacy in their cells, inmates are unable to make a claim of unreasonable search and seizure under the Fourth Amendment).[8]

Defendant notes in his motion to dismiss that Plaintiff does not contest the circumstances of any particular search, or even allege that a search has taken place.  (Doc. No. 15, p. 11.) Defendant nevertheless contends that any search for the type of contraband prohibited by amended BP-03.91 would be reasonable in furtherance of legitimate penological interests.  *Id.* Although his argument difficult to decipher, Plaintiff appears to contest the reasonableness of any search or seizure conducted pursuant to amended BP-03.91.  (Doc. No. 18, p. 6.)  He fails, however, to state a viable Fourth Amendment privacy violation.

First, Plaintiff fails to allege any facts indicating that he has already been subjected to a search of his personal property for sexually explicit materials, or any seizure, under amended BP-03.91.  Second, even assuming a search or seizure of Plaintiff's personal property in his cell were to occur, Plaintiff would have no justified expectation of privacy.  *See Hudson*, 468 U.S. at 526.  As it pertains to sexually oriented and/or explicit materials, the Fifth Circuit has consistently recognized that policies banning such materials serve legitimate penological

---

[8]  In *Gross v. Normand*, the plaintiff appealed the district court's dismissal of his Fourth Amendment claims, among others, as frivolous and/or for failure to state a claim.  *Gross*, 576 F. App'x at 319.  The Court explained that "because an inmate does not have an expectation of privacy in his cell, [the plaintiff] is unable to make a claim of unreasonable search and seizure under the Fourth Amendment."  *Id.* at 320.

interests in deterring nonconsensual sexual activity and promoting rehabilitation.  *See Thompson v. Patteson*, 985 F.2d 202, 205-06 (5th Cir. 1993) (concluding that prison officials did not violate an inmate's constitutional rights by limiting his access to sexually explicit materials even if they are not obscene in order to further legitimate interests in promoting rehabilitation and preventing deviate, criminal sexual behavior in the prison population); *Guajardo v. Estelle*, 580 F.2d 748, 762 (5th Cir. 1978) (same); *Stroble v. Livingston*, 538 F. App'x 479, 480 (5th Cir. 2013) (*per curiam*) (recognizing that prison authorities have discretion to impose regulations limiting access to sexually explicit material to further a legitimate interest in preventing deviate, criminal sexual behavior).  Thus, taken together, Plaintiff does not have an expectation of privacy, and any search for or seizure of Plaintiff's sexually explicit materials under BP-03.91 would be reasonable as being related to legitimate security considerations.[9]  For these reasons, Plaintiff's allegations, even accepted as true, fail to state a viable Fourth Amendment claim.  Accordingly, the undersigned recommends that Defendant's motion to dismiss (Doc. No. 15) be granted and that Plaintiff's Fourth Amendment claim be dismissed with prejudice for failure to state a viable claim for relief.

### 2.  *Plaintiff fails to state an Eighth Amendment claim for deliberate indifference.*

The Eighth Amendment prohibits cruel and unusual punishment.  U.S. Const. amend. VIII.  An Eighth Amendment violation occurs when a prison official acts with deliberate indifference to an inmate's health and safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

---

[9]  Plaintiff disagrees with BP-03.91, believing it is not the appropriate path to combat rape, masturbation, or possession of contraband in prison.  *E.g.*, Doc. No. 1, pp. 9-11.  But courts "'must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them.'"  *Nichols v. United States*, No. 21-50368, 2022 WL 989467, at *3 (5th Cir. Apr. 1, 2022) (quoting *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)).  Thus, although the Court acknowledges Plaintiff's philosophical disagreement with the policy, the Court will not attempt to override the considered judgment of the prison administrators in this case.

The test for deliberate indifference has both an objective and subjective prong. *Id.* at 839. Under the objective prong, the inmate "must first prove objective exposure to a substantial risk of serious harm." *Trevino v. Livingston*, No. 3:14-CV-52, 2017 WL 1013089, at *3 (S.D. Tex. Mar. 13, 2017) (Hanks, J.) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)). To prove the subjective prong of the deliberate indifference test, the inmate "must establish that the defendants were aware of an excessive [or substantial] risk to the plaintiff's health or safety, and yet consciously disregarded the risk." *Cook v. Crow*, No. 1:20-CV-85, 2021 WL 6206795, at *3 (E.D. Tex. July 26, 2021) (citing *Farmer*, 511 U.S. at 840-41 and *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002)).

In order to show that amended BP-03.91 was enacted with deliberate indifference to his health, Plaintiff must show that the policy is facially unconstitutional or that it was promulgated "with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *See Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting *Board of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407 (1997)). "Deliberate indifference is beyond negligence or even gross negligence; it 'must amount to an intentional choice, not merely an unintentionally negligent oversight.'" *White v. Briones*, No. H-09-2734, 2011 WL 66134, at *15 (S.D. Tex. Jan. 7, 2011) (Rosenthal, J.) (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992)). Thus, "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference . . . ." *Alton v. Texas A&M University*, 168 F.3d 196, 201 (5th Cir. 1999).

Liberally construed, Plaintiff claims that amended BP-03.91 was enacted with deliberate indifference to his psychological well-being[10] in violation of the Eighth Amendment.  (Doc. No. 1, p. 9.)  Defendant contends that there was no disregard of a known or obvious consequence because the Fifth Circuit already has concluded that the banning of sexually explicit materials serves a legitimate penological interest.  (Doc. No. 15, pp. 12-13.)  Without directly addressing Defendant's contention, Plaintiff responds that amended BP-03.91 covers a broad scope of materials and will allow prison officials to "harass" him through confiscating various family photos.  (Doc. No. 18, pp. 6-7.)

Plaintiff provides no allegations or arguments to suggest that amended BP-03.91 is facially unconstitutional.  He sets forth his belief that amended BP-03.91 will result in prison officials harassing him.  Plaintiff alleges no specific facts, however, to indicate that Defendant or any other TDCJ official was aware of any known or obvious consequences to Plaintiff's health and psychological well-being and disregarded such risk when amending BP-03.91.  As discussed above, the Fifth Circuit has consistently recognized that prison officials may limit access to certain sexually explicit materials based on legitimate penological interests such as

---

[10]  Plaintiff attempts to broaden his claim to assert that the policy was promulgated with deliberate indifference to all Texas state inmates.  Such an assertion on behalf of all Texas prisoners is improper, and would also fail on the merits.  Additionally, it is worth noting that "[r]equests for class certification by a prisoner acting *pro se* are generally denied because the prisoner cannot 'fairly and adequately protect the interests of the class.'"  *Aiello v. Collier*, No. 2:21-CV-67, 2021 WL 3176008, at *2 (S.D. Tex. May 17, 2021) (Libby, M.J.), *adopted*, 2021 WL 3171957, at *1 (S.D. Tex. July 27, 2021) (Ramos, J.) (citing Fed R. Civ. P. 23(a)(4)).  "[C]ourts have prohibited pro se prisoner class actions from proceeding for fear that the competence of a layman representing himself is clearly too limited to allow him to risk the rights of others."  *Ali v. Immigr. & Customs Enf't*, No. 1:16-CV-037-BL, 2017 WL 881102, at *2 (N.D. Tex. Feb. 2, 2017), *adopted*, No. 1:16-CV-037-C, 2017 WL 880866 (N.D. Tex. Mar. 3, 2017) (internal quotations and citations omitted).  Additionally, Plaintiff has already tried to bring this action in concert with another inmate; the two cases were severed, *see* Doc. No. 5, and Plaintiff must litigate only with regard to his own situation, not that of others.

nonconsensual sexual activity and promoting rehabilitation.  *See Thompson*, 985 F.2d at 202;

*Guajardo*, 580 F.2d at 762; *Stroble*, 538 F. App'x at 480.

Accepted as true, Plaintiff's allegations at best suggest that amended BP-03.91 may be

ineffective in promoting Plaintiff's overall psychological well-being.  However, the allegations

fall short of alleging Defendant's deliberate indifference to any known or obvious consequences

to Plaintiff's health.  The undersigned concludes, therefore, that Plaintiff's Eighth Amendment

deliberate indifference claim challenging amended BP-03.91 is subject to dismissal.

Accordingly, the undersigned recommends that Defendant's motion to dismiss (Doc. No. 15) be

granted and that Plaintiff's Eighth Amendment claim be dismissed with prejudice for failure to

state a claim for relief.

### 3.  *Plaintiff fails to allege a claim for relief under the Due Process Clause.*

Under the Fourteenth Amendment, states are prohibited from depriving "any person of

life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  Liberally

construed, Plaintiff claims that amended BP-03.91 violates his due process rights because he will

be deprived of his personal property previously approved and will face possible disciplinary

action.  (Doc. No. 1, pp. 6-7.)  Defendant contends in his motion to dismiss that Plaintiff cannot

state a procedural due process claim for the intentional deprivation of property because there

exists an adequate post-deprivation remedy.  (Doc. No. 15, p. 13.)  Defendant further contends

that Plaintiff "has not pled a substantive due process violation because he does not have a

protected liberty interest in the possession of contraband while in prison."  *Id.*  Plaintiff responds

that his due process rights are being violated because the personal property at issue had been

previously approved for him to possess and because he has thus far allegedly satisfied all rules in maintaining his personal property.  (Doc. No. 18, p. 7.)

When a prisoner's property is confiscated pursuant to prison policy, the constitutional requirements of due process are satisfied when the prisoner is afforded ample notice and sufficient opportunity to object to the confiscation of his property by way of the prison grievance system.  *See Allen v. Thomas*, No. Civ.A. H-02-3132, 2005 WL 2076033, at *9 (S.D. Tex. Aug. 26, 2005) (Atlas, J.).  "Post-deprivation proceedings such as TDCJ's grievance procedures are adequate to satisfy these requirements with respect to confiscation of property pursuant to prison regulations."  *Matez v. Foley*, No. 2:17-cv-134-Z, 2020 WL 2926464, at *4 (N.D. Tex. June 3, 2020) (citing *Allen*, 2005 WL 2076033, at *9) (other citations omitted).[11]

The Fifth Circuit has found permissible prison policies excluding publications with explicit sexual content, as long as the following guidelines were followed: (1) notification of the decision excluding the publication; (2) a reasonable opportunity to challenge the initial decision; and (3) an ultimate decision rendered by a disinterested party.  *Guajardo*, 580 F.2d at 762, n.10. Amended BP-03.91 provides inmates like Plaintiff these protections by setting forth procedures for inmates to appeal any decision denying incoming correspondence or publications.  (Doc. No.

---

[11]  At page 13 of his motion to dismiss, Defendant cites the Supreme Court's decision in *Zinermon v. Burch*, 494 U.S. 113 (1990), and argues that a prison official's intentional deprivation of a prisoner's personal property does not constitute a due process violation if there exists an adequate state post-deprivation remedy.  *See Zinermon*, 494 U.S.C at 115 (citing *Hudson*, 468 U.S. at 517 and *Parratt v. Taylor*, 451 U.S. 527, 535-55 (1981)) (other citation omitted) (referred to as the *Parratt/Hudson* doctrine); *Murphy v. Collins*, 26 F.3d 541, 543-44 (5th Cir. 1994).  But the *Parratt/Hudson* doctrine does not apply to Plaintiff's due process claim, because that doctrine is aimed at random, unauthorized acts by state employees.  The confiscation of a prisoner's property pursuant to a prison directive or policy is not a random or unauthorized act for purposes of the *Parratt/Hudson* doctrine, and therefore the existence of an adequate post-deprivation state court remedy does not preclude a § 1983 action for a due process violation.  *See Schwarzer v. Wainwright*, 810 F. App'x 358, 359 (5th Cir. 2020) (*per curiam*); *Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004).  "Conduct is not 'random or unauthorized' … if the state 'delegated to [the defendants] the power and authority to effect the very deprivation complained of.'"  *Schwarzer*, 810 F. App'x at 359 (citing *Zinermon*, 494 U.S. at 138).  Here, Plaintiff's claim does not refer to property being taken under some random, unauthorized act by a state employee, but rather pursuant to a prison policy: amended BP-03.91.

15-1, pp. 12, 16-17.)  As part of the review process, inmates may seek review of decisions to reject publications for containing sexually explicit images by the DRC.  *Id.*

Plaintiff alleges no facts to indicate that officials have yet confiscated any personal property under BP-03.91, or that he would be prohibited from appealing any such future action to confiscate personal property under the policy.  He makes no allegation suggesting that administrative remedies under TDCJ's grievance procedures would be unavailable should his personal property be confiscated under amended BP-03.91.  Additionally, even though Plaintiff sufficiently alleges consequences that are imminent, as previously mentioned, this is not the same as sufficiently alleging a plausible claim upon which relief can be granted.  *See Redd v. Stone*, No. CV 19-0231, 2019 WL 2296763, at *4 (W.D. La. Apr. 30, 2019), *adopted*, No. 3:19-cv-0231, 2019 WL 2296739 (W.D. La. May 28, 2019) (explaining that even assuming the plaintiff could allege actual or imminent harm, he fails to state a plausible claim).

In addition, Plaintiff fails to state a substantive due process violation.  A prisoner has a liberty interest only in freedom from restraints that impose an atypical and significant hardship in relation to ordinary incidents of prison life, or in those that extend the length or duration of confinement.  *See Sandin v. Conner*, 515 U.S. 472, 484-86 (1995).  Plaintiff believes that he will have certain personal property confiscated under amended BP-03.91 and that he will be subject to disciplinary action.  However, Plaintiff's allegations reflect that none of these adverse actions have yet occurred pursuant to amended BP-03.91.  Plaintiff therefore fails to state a violation of a protected liberty interest as his allegations do not show he has suffered any constitutionally cognizable harm.  *See Rodriguez v. Bell*, No. 2:14-CV-447, 2014 WL 9909548, at *6 (S.D. Tex. Dec. 17, 2014) (Libby, M.J.), *adopted*, 2015 WL 3756509, at *5 (S.D. Tex. June 16, 2015) (Ramos, J.) (citing *McFaul v. Valenzuela*, 684 F.3d 564, 579 (5th Cir. 2012)).

Accordingly, the undersigned recommends that Defendant's motion to dismiss (Doc. No. 15) be granted and that Plaintiff's due process claims be dismissed with prejudice for failure to state a claim upon which relief can be granted.

### 4. Plaintiff fails to allege a claim for relief under the Equal Protection clause.

The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Duarte v. City of Lewisville*, 858 F.3d 348, 353 (5th Cir. 2017) (internal quotation marks and citations omitted); *Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016).  To establish an equal protection claim, a plaintiff must first demonstrate that "two or more classifications of similarly situated persons were treated differently."  *Duarte*, 858 F.3d at 353 (internal quotation marks and citations omitted).  If a suspect class (such as race or religion) or a fundamental right is implicated, the courts apply "strict scrutiny."  *Id.* at 353-54.  If not, the courts apply "rational basis review," and will uphold the classification if it bears a "rational relation to a legitimate governmental purpose." *Id.* at 354.

Furthermore, to establish an equal protection violation, a plaintiff also must prove "purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Butts v. Martin*, 877 F.3d 571, 590 (5th Cir. 2017) (internal quotation marks and citation omitted); *Baranowski v. Hart*, 486 F.3d 112, 123 (5th Cir. 2007).  The Equal Protection Clause "does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made."  *Wood*, 836 F.3d at 538-39 (internal quotation marks and citation omitted).

Plaintiff claims that his equal protection rights have been violated under amended BP-03.91 because: (1) he will suffer harm by those inmates who choose to rape, masturbate, use drugs, and possess cell phones; and (2) TDCJ consistently attacks males who refuse to be homosexual and is, therefore, promoting homosexuality with their policies.  (Doc. No. 1, pp. 10-11.)  Defendant contends in his motion to dismiss that Plaintiff's equal protection claim fails because all Texas prisoners are subject to the same policy and because Plaintiff alleges nothing to show that prison officials enacted the policy with a discriminatory purpose.  (Doc. No. 15, pp. 14-15.)  Plaintiff responds that prison authorities have allowed transgender males to have special privileges and that amended BP-03.91 is a "transgender policy."  (Doc. No. 18, p. 8.)

Plaintiff's equal protection claim does not involve any suspect class being treated less favorably under amended BP-03.91.  The policy banning sexually explicit materials applies to all Texas prisoners, including those inmates who are homosexual or transgender, as well as inmates with disciplinary issues.  Plaintiff's conclusory allegations fail to suggest that any similarly situated TDCJ prisoners are treated more (or less) favorably under the policy or that the policy was enacted with a discriminatory purpose.  Plaintiff's allegations, even accepted as true, fail to state a plausible equal protection claim.  Accordingly, the undersigned recommends that Defendant's motion to dismiss (Doc. No. 15) be granted and that Plaintiff's equal protection claim be dismissed with prejudice for failure to state a claim for relief.

### G.  The Eleventh Amendment does not bar Plaintiff's official capacity claims against Defendant.

Defendant argues that Plaintiff's official capacity claims are barred by the Eleventh Amendment.  (Doc. No. 15, pp. 4-6.)  Should the district court determine that Plaintiff's allegations survive dismissal despite the reasoning above, the Court disagrees with Defendant's

assertion of Eleventh Amendment immunity.  "The Eleventh Amendment bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity."  *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002) (citations omitted).  "The state need not be the named party in a federal lawsuit, for a state's Eleventh Amendment immunity extends to any state agency or entity deemed an 'alter ego' or 'arm' of the state."  *Id.*  The Eleventh Amendment bar, when it applies, implicates the court's subject-matter jurisdiction.  *Warnock v. Pecos Cnty.*, 88 F.3d 341, 343 (5th Cir. 1996).

*Ex parte Young* provides "an equitable exception to Eleventh Amendment sovereign immunity . . . [that] allows plaintiff to sue a state official, in his official capacity, in seeking to enjoin enforcement of a state law [or policy] that conflicts with federal law."  *Air Evac EMS, Inc. v. Texas, Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 515 (5th Cir. 2017) (citing *Ex parte Young*, 209 U.S. 123, 155-56, 159-160 (1908)).  "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotations and modifications omitted).

Under the *Ex Parte Young* exception, plaintiffs may bring "suits for injunctive or declaratory relief against individual state officials acting in violation of federal law."  *Raj v. Louisiana State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013) (citing *Ex parte Young*, 209 U.S. at 155-56).  To be a proper defendant, the state official must have "some connection" to the law's enforcement.  *Ex parte Young*, 209 U.S. at 157.  "The required 'connection' is not 'merely the general duty to see that the laws of the state are implemented,' but 'the particular duty to enforce

the [law] in question and a demonstrated willingness to exercise that duty.'" *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014) (quoting *Okpalobi v. Foster*, 244 F.3d 405, 416 (5th Cir. 2001) (*en banc*)).  *Ex parte Young* only applies, therefore, when the state official has "some connection to the state law's *enforcement*, which ensures that the suit is not effectively against the state itself." *Texas Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020) (internal quotations and citations omitted).

Defendant contends in his motion to dismiss that the *Ex parte Young* exception is inapplicable because he had no connection to the drafting or implementation of BP-03.91.  (Doc. No. 15, pp. 5-6.)  Defendant contends, therefore, that Plaintiff's claims against Defendant in his official capacity are barred by the Eleventh Amendment and subject to dismissal for lack of subject matter jurisdiction.  *Id.* at 6.  Plaintiff responds that Defendant, as TDCJ-CID's director, is responsible for enforcing all policies implemented in the prison context and bears "some responsibility" to amend BP-03.91 and implement a more suitable policy.  (Doc. No. 18, pp. 4-5.)

According to Defendant, BP-03.91 was promulgated by the TDCJ Board of Directors and is enforced at the unit level.  (Doc. No. 15, p. 5.)  Defendant's contention implies that the TDCJ Board of Directors (Board), as opposed to the TDCJ-CID director, should be the proper defendants to sue for injunctive relief.  However, even assuming that the Board is the policymaking arm of the TDCJ and was responsible for promulgating BP-03.91, that does not mean that only members of the Board, but not Defendant, are amenable to suit.  *See Haverkamp v. Linthicum*, 6 F.4th 662, 670 (5th Cir. 2021) (concluding a state official's role in promulgating a policy does not render the official "suable *under Ex parte Young*" because promulgation, "standing alone, is not the power to enforce that policy").

25 / 28

Furthermore, the provisions set forth in BP-03.91 do not support Defendant's contention that the policy is to be enforced entirely at the unit level.  As part of the policy, a Director's Review Committee (DRC) consisting of appointed TDCJ administrators was granted "authority to hear all appeals related to rejected correspondence, publications, and placements on negative mailing lists."  (Doc. No. 15-1, p. 4.)  The policy itself is unclear with regard to whether Defendant, or any other TDCJ official, has any specific authority to enforce it.  But the Court, on the current record, agrees that Plaintiff has made a sufficient allegation that Defendant, as the TDCJ-CID director, bears some responsibility with regard to enforcing this policy and a willingness or capability to exercise that duty.

The undersigned finds, on the current record, that Defendant, the TDCJ-CID Director, may have a stronger connection to enforcing amended BP-03.91, at least as compared to members of the Board or any McConnell Unit official, and is more likely capable of providing the requested injunctive relief as to Plaintiff's claims challenging that Board policy.  Accordingly, the undersigned recommends that Defendant's motion to dismiss (Doc. No. 15) be denied to the extent Defendant argues that Plaintiff's claims against Defendant are barred by the Eleventh Amendment.[12]

---

[12]  Plaintiff requests permission to amend his complaint and name the proper defendants should it be determined that Defendant has no connection in enforcing BP-03.91. (Doc. No. 18, p. 5.)  The undersigned agrees that Plaintiff should ordinarily be afforded an opportunity to amend his complaint on this issue should the district court conclude that Defendant is not the proper defendant in this case.  As discussed in the main text, however, the undersigned recommends that this action be dismissed for Plaintiff's failure to state a claim upon which relief can be granted. Consequently, if the undersigned's recommendation of every claim is adopted, any attempt to amend the complaint to name someone else as the proper defendant would be futile.

### *H.  Recommendation.*

For the foregoing reasons, the undersigned recommends that Defendant's motion to dismiss (Doc. No. 15) be **GRANTED in part**.  Plaintiff's Fourth Amendment, Eighth Amendment, due process, and equal protection claims against Defendant should be **DISMISSED with prejudice** for failure to state a claim for relief.  However, the undersigned recommends that Defendant's motion to dismiss based on lack of subject matter jurisdiction and Eleventh Amendment immunity be **DENIED** because Plaintiff possesses standing to bring his claims and because the Eleventh Amendment bar does not apply in this case.  The undersigned further recommends that the dismissal of this case count as a "strike" against Plaintiff for the purposes of 28 U.S.C. § 1915(g).[13]

### *I.  Notice.*

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **14 days** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **14 days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

---

[13]  Plaintiff is **WARNED** that if he accumulates three strikes he will not be allowed to proceed *in forma pauperis* in any civil action or appeal filed while he is incarcerated or detained in any facility unless he is under imminent danger of serious injury.  *See* 28 U.S.C. § 1915(g).

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District

Court.  *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED on July 13, 2022.

MITCHEL NEUROCK
United States Magistrate Judge